# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**ROBERT JAMES SOLNICK**                                                                          **PLAINTIFF**

**VERSUS**                                                **CIVIL ACTION NO. 1:18cv388-LG-RHW**

**COMMISSIONER OF SOCIAL SECURITY**                                              **DEFENDANT**

## REPORT AND RECOMMENDATION

Robert James Solnick filed this action on December 12, 2018, seeking judicial review of the denial of his claim for Social Security disability insurance benefits. Solnick challenges the decision, asserting that the Commissioner erred in failing to properly analyze opinion evidence, and in failing to consider Plaintiff's work history in assessing credibility. Solnick filed [10] his brief in support of the complaint on May 8, 2019; the Commissioner responded July 8, 2019 [11], and Solnick filed [12] his reply on July 22, 2019. The matter is now ripe for ruling.

## Facts and Procedural History

On October 22, 2014, Robert James Solnick filed an application for Social Security disability insurance benefits, alleging he had been disabled since September 1, 2014 (at age 57) due to right carpal tunnel, right elbow epicondylitis, PTSD, chronic low back pain, neck pain, Menere's (*sic*) disease, diverticulosis/diverticulitis, bilateral hearing loss and tinnitus, and cardiac dysrhythmia. [9, p. 98] The claim was denied initially on May 7, 2015 and on reconsideration, September 10, 2015. [9, pp. 108, 119] At Solnick's request, Administrative Law Judge (ALJ) Lanier Williams conducted a hearing on June 21, 2017, attended by Solnick and his attorney,[1] and Vocational Expert (VE) Samantha May. At the hearing, the ALJ received documentary evidence and heard testimony from Solnick and May. [9, pp. 46-97]

---

[1] Solnick has been represented by attorneys since June 2015. [9, pp. 123-125, 147-148]

Solnick was 59 years old at the time of the hearing.  He is a college graduate who retired from the military in 2003 after serving almost 30 years and receives VA benefits.  He worked in the private sector thereafter, but testified he has not worked nor sought work since September 2014 following surgery on his hand and elbow;[2] he testified he was unable to complete rehabilitation due to onset of heart problems in December 2014.  He claims residual numbness in his fingers makes it difficult for him to write or type.  He stated he has had four heart procedures in the past 20 months and has chest pains almost daily, which last five to ten minutes.  He uses nitroglycerin, but testified using it gives him bad headaches.  He has diverticulitis which flares up at times requiring antibiotics; his last flare-up was in December 2016.  [9, pp. 64-85]

Vocational Expert May testified Solnick was employed in the past 15 years as a quality control supervisor which is classified light work with a skill level of 7, performed as medium work, and as a project engineer which is light work, skill level 8.  Solnick was a supervisor in both these jobs.  According to May, Solnick has transferrable skills from the past work including reviewing goals/objectives of a project, staff and operations; ability to schedule; ability to compose/create documents such as letters, directions, reports, proposals, graphs, flowcharts and blueprints; and ability to review, reorganize and analyze information and proposals.  May testified the Dictionary of Occupational Titles (DOT) does not specifically cover overhead reaching, but the quality control supervisor job requires frequent reaching, handling and fingering, and the project engineer job requires occasional fingering and reaching,[3] and frequent handling.  [9, pp. 57-62]  The ALJ asked May to provide information regarding light or sedentary level jobs requiring occasional use of the non-dominant upper extremity (Solnick

---

[2] He had surgery for his elbow and carpal tunnel in September 2014, and testified he still does not have full use of his right hand and has numbness in his ring and little fingers. [9, pp. 72, 294-95, 397-98]

[3] According to Solnick the job required frequent reaching as he performed it.

testified he had a left rotator cuff problem). Considering those limitations, along with Solnick's age, education, work experience and residual functional capacity, May testified Solnick can perform jobs such as quality control supervisor which is sedentary work, skill level 4 and requires occasional reaching, handling and fingering; personnel quality assurance auditor which is light work, skill level 6 and requires occasional reaching, handling and fingering; and quality assurance monitor which requires frequent reaching and handling and occasional fingering. Overhead reaching is not a requirement of any of these jobs, and the work requires no more than a minimal vocational adjustment. [9, pp. 86-87, 91-92] If he were to be off-task 15% of the time due to problems related to his heart, pain, diverticulitis or a combination of those, or if he were to be absent from work at least twice a month, the jobs would not be available. [9, pp. 93-94]

On October 4, 2017, ALJ Williams issued a fifteen-page opinion finding Solnick not disabled since September 1, 2014. [9, pp. 16-30] On October 10, 2018, the Appeals Council denied review. [9, pp. 5-7] Solnick now seeks judicial review of the Commissioner's decision.

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). To determine whether substantial evidence supports the decision, the Court reviews the entire record. *Villa*, 895 F.2d at 1022.

Issues of credibility of witnesses and conflicts in the evidence are for resolution by the Commissioner; the Court may not re-weigh the record evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse the Commissioner's decision if it is based upon faulty legal analysis but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Commissioner's decision "is accorded great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

Law and Analysis

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). As the one claiming disability, Solnick had the burden to prove disability which kept him from engaging in substantial gainful work, *i.e.*, work involving significant physical or mental activities and usually done for pay or profit. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Williams applied the correct law for determining disability - the five-step sequential evaluation process set out at 20 C.F.R. § 404.1520. "A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the [Commissioner's] analysis." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1995) (citation omitted). At Step One, the ALJ found Solnick had not engaged in substantial gainful activity since September 1, 2014; and at Step Two, that he has a severe impairment of coronary artery disease with stent placements. Citing record evidence (or lack thereof), the ALJ carefully articulated his reasons for finding the following conditions not severe: rotator cuff tear of the left shoulder, bilateral hearing loss and tinnitus, Meniere's disease, right carpal tunnel and epicondyle release, spine disorder, diverticulitis and hiatal hernia. [9, pp. 19-21] At Step Three, ALJ Williams found Solnick does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.

Considering the entire record, and the limitations and restrictions imposed by the combined effects of all Solnick's medically determinable impairments, including those found

non-severe, the ALJ found Solnick has the residual functional capacity (RFC) to perform light work[4] with a limitation of no more than occasional overhead reaching involving his left arm. Because Solnick's prior work comes within the limitations noted in the RFC, the ALJ found him capable of performing his past relevant work at Step Four. [9, pp. 22-30] At that point, it was Solnick's burden to prove he *could not* perform his past work. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (claimant bears the burden of proof at Steps One through Four of the sequential evaluation).

Solnick first argues the ALJ erred in "failing to analyze the examining opinion evidence in accordance with the regulations, Agency policy, and Fifth Circuit precedent." [10, p. 4] Specifically, he complains of the ALJ's giving little weight to the February 2015 opinion of consultative examiner Dr. Harold Coulter, and the January 2016 opinion of Family Nurse Practitioner Tara Jochum. In his four-page report, Dr. Coulter documented Solnick's chief complaint, "I've had surgery of my hand, my right elbow, and recent heart surgery. I feel I'm disabled and can't work because I'm currently undergoing cardiac rehab, additional surgery is required for my hand and elbow;" Dr. Coulter also noted his medications and history, and indicated that Solnick stated he could attend to his personal hygiene, can operate a vacuum cleaner and take out the trash, but cannot mop, sweep, fold laundry or wash dishes. On physical examination, Dr. Coulter noted Solnick "walked into the examination without assistance or the use of an assistive device, … sits comfortably … can get on and get off the examination table… and can take his shoes off and put them back on." Cardiovascular findings included "regular rate

---

[4] Light work requires ability to lift no more than 20 pounds at a time with frequent lifting/carrying up to 10 pounds; a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. One capable of light work can also do sedentary work absent additional limiting factors, *e.g.*, loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. 404.1567(b).

and rhythm, normal S1, S2, no extra sounds or murmur… no edema." He was able to tandem walk, walk on his toes, walk on his heels, squat, and hop, and Romberg examination was negative. Pulses were 2+ and equal bilaterally in the carotid, radial, dorsalis pedis and the posterior tibial pulses; all range of motion measurements were within normal limits and straight leg raising test was normal. Other than findings of evidence of nerve irritation in Solnick's wrists, numbness and tingling along the ulnar distribution, and diminished strength (2/5) in his right upper extremity, Dr. Coulter's objective medical findings were essentially normal. He assessed no environmental limitations and no limitation on sitting, but opined that Solnick could do only sedentary work, could stand/walk a maximum of four hours in a day; that because of his carpal tunnel syndrome, he could lift/carry a maximum of less than ten pounds and occasionally reach, handle, finger and feel; and due to associated use of upper extremities, he could only occasionally climb, balance, stoop, kneel, crouch, and crawl. [9, pp. 419-422] Nurse Practitioner Tara Jochum's undated, single-page letter received in early 2016 states she has monitored Solnick "for several years," notes his reported cardiac, carpal tunnel and right elbow problems and surgeries, states he cannot hold objects of any weight without losing his grip and dropping them, and that he has angina with spasms for which he uses nitroglycerin. Jochum opines that Solnick is unemployable. [9, p. 623]

     ALJ Williams explained why he assigned little weight to these opinions, identifying the pertinent exhibits from the record. Dr. Coulter's opinion was based on a single encounter with Solnick, remote in time; it was inconsistent with the correlating examination findings as well as the record as a whole, *e.g.*, the walk/stand limitations were unsupported by either Dr. Coulter's own examination, or by records of Solnick's other medical care providers which consistently

reported normal gait and negative (normal) Romberg test [9, pp. 420-21, 599, 609, 668-69];[5] and subsequent evidence showed a lesser degree of limitation, *e.g.*, Solnick "successfully completed physical therapy for his carpal tunnel and improved in range of motion, posture, and technique." Solnick's physical therapy records document improved function and reduced pain with respect to the hand and elbow, along with other normal findings by December 2014. [9, pp. 303-306] In addition, other treatment records in the record "reflect grossly normal clinical findings in the upper extremities," and he "has been managed conservatively, with injection therapy in his left rotator cuff." [9, pp. 403, 459, 713] As for Jochum's opinion, the ALJ noted that whether a claimant is unemployable is for the Commissioner to decide; that Jochum's opinion is "vague, conclusory and not expressed in vocationally relevant terms;" that "there are no correlating and contemporaneous treatment records from Ms. Jochum to substantiate such extreme limitations;" and the opinion is not consistent with Solnick's testimony regarding his wide range of activities of daily living, or with "clinical findings in evidence which reflect conservative management and grossly normal clinical findings." [9, p. 26]

An ALJ is not bound by a doctor's opinion that one is unable to work; in fact such statements are not deemed medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean [the Commission] will determine that you are disabled.") Even a treating physician's opinion that a claimant cannot work is not entitled to any special weight or analysis by the ALJ. 20 C.F.R. 404.1527(d)(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). An ALJ may discount a treating physician's opinion if it is conclusory, or without objective medical evidence

---

[5] Even Solnick and his wife stated walking "is not an issue." [9, pp. 211, 203]

supporting it, or if it is otherwise unsupported by the record or inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c); *Perez*, 415 F.3d at 465-66. The Court is not authorized to re-weigh the evidence; the weight to be given evidence, including medical evidence, is an issue for determination by the Commission. *Johnson v. Bowen*, 864 F.340, 347 (5th Cir. 1988). The undersigned finds no error in the ALJ's choosing to give little weight to opinions of Dr. Coulter and NP Jochum and to instead give great weight to Solnick's treating cardiologist Dr. Barrios, consultative examining psychologist Dr. Zakaras, and to the functional assessments of State Agency medical consultants Dr. Hand and Dr. Saddler. For example, following the December 2014 heart surgery, Dr. Barrios reported in May 2015 that while Solnick had some shortness of breath on exertion,[6] he denied having chest pain with exertion; he had a regular heart rate and rhythm, unlabored respirations and normal movement of all extremities. [9, pp. 455-56] Dr. Zakaras opined that Solnick was capable of performing routine, repetitive tasks, following and understanding instructions, relating to others and making decisions; the ALJ found that opinion consistent with his VA treatment records. [9, p. 549] The State Agency medical consultants found Solnick capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, walking and standing sitting for six hours in an eight-hour day, sitting for six hours in an eight-hour day and able to return to his past relevant work. [9, pp. 104-105, 116-117] Resolution of conflicts in the evidence is for the Commissioner to determine; a finding of no substantial evidence is appropriate only when there exist no credible evidentiary choices or medical findings to support the Commissioner's decision. See *Johnson v. Bowen*, 864 F.2d 340, 343-44. The undersigned finds the ALJ determined Solnick's residual functional capacity in accordance with applicable law, and that substantial record evidence supports the finding.

---

[6] Solnick told VA medical personnel he has had shortness of breath "for a long time." [9, p. 549]

Since the ALJ found Solnick able to return to his past relevant work, and Solnick has not proven otherwise, there was no requirement that the evaluation process proceed to Step Five. Therefore the undersigned finds no merit in Solnick's claimed error predicated on the ALJ's alternative finding that other work also exists which Solnick can perform. In any event, the undersigned is of the opinion that the 7,000+ other jobs identified by the vocational expert constitute "significant numbers" as needed when Step Five analysis is required. *See Mercer v. Halter*, 2001 WL 257842 at *6 (N.D. Tex. March 7, 2001) (5000 jobs in national economy constitute significant numbers).

Finally, Solnick argues the ALJ failed to consider his work history in assessing credibility. The Commissioner does not dispute that Solnick's work history is one of many factors to be considered and weighed by the ALJ, but urges that "the language of 20 C.F.R. § 404.1529(c)(3) does not mandate that special significance be attributed to a claimant's work history." *Crain v. Colvin*, 2016 WL 4471662, at *6 (S.D. Miss. August 1, 2016), *report and recommendation adopted*, 2016 WL 4471882 (S.D. Miss. August 24, 2016). The ALJ acknowledged that Solnick is "a Marine veteran with commendable service," but found Solnick's testimony about his functional limitations inconsistent with objective medical evidence and other record evidence. [9, p. 23] The undersigned finds Solnick has shown no error of law in the ALJ's finding, and it is not for this Court to re-weigh that evidence. Upon review of the entire record, the briefs and arguments of the parties the undersigned finds the ALJ fairly summarized and discussed the record evidence, articulated his reasons for the weight he assigned to particular evidence, and accurately cited record evidence which supports his findings.

**RECOMMENDATION**

Bearing in mind the Court's limited function on review and respecting the prerogative of the Commission to decide issues of credibility and weight to be given evidence, the undersigned finds substantial evidence supports the Commissioner's final decision and it is in accord with relevant legal standards. The undersigned recommends that decision be affirmed.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Within 14 days after service of a copy of this Report and Recommendation a party may serve and file with the Clerk written objections to it, specifically identifying the findings, conclusions, and recommendations to which he objects. *L.U.Civ.R.* 72(a)(3). The District Court need not consider frivolous, conclusive, or general objections. The opposing party must file responses to objections within seven days after service or notify the District Judge that he does not intend to respond. Absent timely written objections, one may not attack on appeal any proposed factual finding or legal conclusion accepted by the District Court, except on plain error grounds. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 14th day of February 2020.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE